The STATE of Ohio, Appellee,

v.

HARRIS, Appellant.

[Cite as *State v. Harris* (1998), 129 Ohio App.3d 527.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA11–1506.

Decided Aug. 25, 1998.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, and *Thomas K. Lindsey,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

LAZARUS, Judge.

Defendant-appellant, Jessie R. Harris, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of murder for the death of Gary Greer during an altercation at a bar in Columbus, Ohio. Because we find that the trial court failed to fully instruct the jury on the privilege of coming to the defense of another, we reverse.

On February 6, 1997, appellant was indicted on a single count of aggravated murder in violation of R.C. 2903.01. Appellant pleaded not guilty to the charge, and a jury trial commenced on October 15, 1997.

At trial, the prosecution presented evidence from numerous witnesses tending to show that appellant purposefully struck and killed Gary Greer with a baseball bat during a fight at the Aragon Lounge on the evening of December 22, 1996. According to the witnesses for the prosecution, appellant's friend, Joe West, started the fight at the bar and Greer was not involved in the fight when appellant struck him. By way of defense, appellant admitted to striking Greer with the bat but contended that he did so in self-defense, in defense of his mother, and in defense of his friend Joe West.

In particular, appellant testified as follows. On the night in question, appellant and his friend, Joe West, went to a Christmas party at the Aragon Lounge, where appellant's mother worked as a bartender. While there, West and another patron began arguing near the jukebox. This patron began to push West as other patrons started to gather around West. At the request of his mother and in an attempt to avoid trouble, appellant intervened and escorted West toward a back exit of the bar, where they were closely followed by a group of bar patrons. As he was leading West out the door, appellant saw a brick coming toward him (apparently from outside the bar) and he ducked. The brick subsequently struck West in the side of the head. At that point, appellant turned toward the brick-thrower, identified by appellant as the victim Gary Greer, and grabbed him in a bear hug. This prompted Greer to state, "Let me the fuck go before I cut your fucking heart out." Appellant responded by striking Greer with an elbow and was about to hit Greer again when appellant was grabbed from behind by another, unidentified person. While appellant wrestled with this person, a third person approached and hit appellant with a baseball bat. Appellant eventually wrestled the bat away, causing his assailants to retreat. Appellant then headed toward his friend, West. As he approached, he saw that West and his mother both were being "stomped on" and kicked by several persons, including Greer. Appellant testified that at this point, he saw that Greer, who was standing between West and appellant's mother, had a knife in his hand. Appellant swung the bat at Greer intending to strike Greer in the shoulder in order to make him drop his weapon. However, by accident or because Greer ducked, appellant struck Greer in the head, and Greer fell to the ground. According to appellant, he never intended to kill Greer, but believed that striking Greer with the bat was the only action he could take to protect his mother and West from being harmed or possibly being killed.

The testimony of Joe West and Frankie Moore, while not completely consistent with that of appellant, coincided with the basic facts of appellant's story. West testified that the argument in the bar was started when one of the other bar patrons wrongfully accused West of playing her songs on the jukebox, that this patron began to shove him, that he never retaliated in the bar, and that he was

struck by a brick and other thrown objects as he was forced from the bar by appellant and the crowd. As to the events outside of the bar, West testified that during the fight he saw Frankie Moore come out of the bar toward him, but that both he and Moore found themselves on the ground being held down and stomped by various people. West further stated that he was cut by a knife during the melee, but that he never saw Greer with a knife, could not confirm that Greer was involved in the fighting, and did not see the appellant strike Greer with the bat. Similarly, Frankie Moore testified that in trying to come to the aid of West, she was struck, fell to the ground, and was kicked and stomped. While she also testified that Greer was one of the persons beating her and West, she did not see a knife and did not see appellant strike Greer with the bat.

At the conclusion of the evidence, the trial court instructed the jury on the offense of aggravated murder, the lesser offense of murder, the privilege of self-defense, and the privilege of coming to the defense of another as it related to appellant's mother Frankie Moore. The trial court rejected, however, appellant's request that the jury be instructed on the lesser offense of voluntary manslaughter and the privilege of coming to the defense of another as it related to West.

The jury returned a guilty verdict on the lesser offense of murder, and the trial court sentenced appellant to an indefinite prison term of fifteen years to life. Appellant now appeals, raising the following four assignments of error:

1. "The trial court erred when it denied the defendant's request for a charge to the jury on the lesser offense of voluntary manslaughter and further erred when it failed to charge the jury on the lesser offense of involuntary manslaughter."

2. "The trial court erred when it overruled the defendant's request to charge the jury on the law of the defense of another as it pertained to the defense of the defendant's friend, Joseph West."

3. "The trial court erred when it charged the jurors that they could infer that the defendant acted to purposely cause the death of the decedent, gave improper instruction on the duty of Frankie Moore to retreat, and improperly instructed the jurors on the inferences it could not draw from the words used by the decedent."

4. "The trial court erred when it allowed the state, over the objection of the defendant, to introduce irrelevant testimony designed to create sympathy, unfair prejudice, and bias."

In his first assignment of error, appellant contends that the trial court erred in failing to charge the jury on the lesser offenses of voluntary manslaughter and involuntary manslaughter. We disagree.

As to the offense of involuntary manslaughter, appellant's trial counsel never requested that the trial court instruct the jury on such a charge. As a result, the appellant has waived the issue on appeal absent a showing of plain error. Crim.R. 30(A); Crim.R. 52(B); see, also, *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 361, 444 N.E.2d 1332, 1333 ("Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim. R. 30, is a waiver of the issue on appeal"). To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See *State v. Tichon* (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16, 22. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043, 1045–1046. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips* (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643, 657; *State v. Ospina* (1992), 81 Ohio App.3d 644, 647, 611 N.E.2d 989, 991.

Appellant cannot show a manifest miscarriage of justice in this case. Where a defendant fails, based upon tactical considerations, to object to the instructions of the trial court, the defendant cannot claim plain error on appeal. *State v. Clayton* (1980), 62 Ohio St.2d 45, 16 O.O.3d 35, 402 N.E.2d 1189; *State v. Edwards* (1985), 26 Ohio App.3d 199, 26 OBR 420, 499 N.E.2d 352. There is a strong presumption that trial counsel's failure to request an instruction on lesser offenses is a matter of trial strategy. See *State v. Griffie* (1996), 74 Ohio St.3d 332, 333, 658 N.E.2d 764, 765–766. This is especially true when the defendant claims self-defense, because an instruction on the lesser offense may confuse the jury with inconsistent theories of the defense and/or reduce the hope of attaining a complete acquittal. *State v. Moore* (1994), 97 Ohio App.3d 137, 149–150, 646 N.E.2d 470, 477–479; *State v. Catlin* (1990), 56 Ohio App.3d 75, 78–79, 564 N.E.2d 750, 754–755; see, also, *State v. Baker* (1996), 111 Ohio App.3d 313, 324, 676 N.E.2d 143, 150 ("It is reasonable trial strategy to argue self-defense and not request an instruction on an inferior degree offense or lesser included offense").

Likewise, trial counsel's failure to request an instruction on involuntary manslaughter in this case fell reasonably within the realm of trial strategy. At trial, appellant advanced a two-prong defense: (1) that he acted in defense of himself and others and (2) that he did not intend to kill the victim. Had the jury believed either assertion, it would have been required to completely acquit the defendant on the sole charges instructed, *i.e.*, aggravated murder and murder. However, had involuntary manslaughter been an option, the jury could have convicted him of that offense had it failed (for whatever reason) to accept the self-

defense and defense-of-another theory but still believed that appellant did not intend to kill Greer. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 47, 630 N.E.2d 339, 349 (murder requires purpose to kill, but involuntary manslaughter requires only killing as a proximate result of committing a felony). As a result, it was within the realm of trial strategy not to request an instruction on involuntary manslaughter because such an instruction reduced the chances of a complete acquittal. Consequently, the trial court did not commit plain error by failing to give such an instruction.

 Likewise, we find that the trial court did not err in denying appellant's request to instruct the jury on the lesser offense of voluntary manslaughter. In short, we find that the evidence adduced at trial did not support such a charge.

R.C. 2903.03, which defines the offense of voluntary manslaughter and distinguishes it from murder, states:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."

 Thus, a defendant is entitled to an instruction on the lesser offense of voluntary manslaughter if the evidence, when construed most favorably to the defendant, would allow the jury to reasonably find that the defendant established, by a preponderance of the evidence, that he acted under the influence of sudden passion or in a fit of rage brought on by serious provocation by the victim that is reasonably sufficient to incite the use of deadly force. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 617–618, 590 N.E.2d 261, 263–264. To warrant such an instruction, both an objective and subjective test must be met. *State v. Shane* (1992), 63 Ohio St.3d 630, 634–635, 590 N.E.2d 272, 276–277. First, the provocation must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *Id.* at 635, 590 N.E.2d at 276–277. Second, if that objective test is met, the defendant must show that in this particular case he was actually under the influence of sudden passion or in a sudden fit of rage. *Id.* at 634, 590 N.E.2d at 276; see, generally, *State v. Thomas* (Mar. 26, 1996), Franklin App. No. 95APA08–984, unreported, 1996 WL 145457. In determining whether this subjective requirement has been satisfied, the emotional and mental state of the defendant, as well as the conditions and circumstances that surrounded him, must be considered.

Appellant incorrectly contends that the same evidence that supported his claim of self-defense and defense of others also supported his request for an instruction on voluntary manslaughter. As noted above, voluntary manslaughter requires

that the defendant be under the influence of sudden passion or a fit of rage. Thus, this court has held that evidence supporting the privilege of self-defense, *i.e.*, that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute. See *State v. Tantarelli* (May 23, 1995), Franklin App. No. 94APA11–1618, unreported, 1995 WL 318730 (testimony that defendant was dazed, confused, and scared was insufficient to show sudden passion or fit of rage); *State v. Thompson* (Feb. 23, 1993), Franklin App. No. 92AP–1124, unreported, 1993 WL 51114 ("Self defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage").

While appellant relies extensively on this court's decision in *State v. Roddy* (Nov. 17, 1981), Franklin App. No. 81AP–499, unreported, 1981 WL 3600, for the proposition that fear for one's own safety is sufficient to warrant a voluntary manslaughter instruction, that reliance is misplaced. At the time *Roddy* was decided, the voluntary manslaughter statute required only that the defendant establish that he was "under extreme emotional stress." See *id.* at 3. However, given that voluntary manslaughter now requires that the defendant be under the influence of "sudden passion or fit of rage," the position advanced by appellant and supported by *Roddy* cannot now be maintained. See *Tantarelli* and *Thompson, supra*. Simply put, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack* (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328, 1331 (upholding refusal to grant an aggravated assault instruction when defendant testified that he acted out of self-defense).

Here, the evidence adduced at trial failed to demonstrate that appellant acted under the influence of sudden passion or in a fit of rage as required for an involuntary manslaughter charge. Appellant testified that he struck Greer with the bat because Greer was "stomping" on both his mother and West, that he felt that Greer might cut either of them, that he believed it was the only action he could take to protect him, his mother, and West, that he did not intend to kill Greer, and that he believed it was one's duty to defend one's family. Therefore, appellant's own testimony revealed that he acted out of fear for his safety, concern for the safety of his mother and friend, and an obligation to protect his family. Nothing in appellant's testimony or the other evidence at trial supports a finding that appellant was under the influence of sudden passion or fit of rage— *i.e.*, akin to anger, hatred, jealousy, and/or furious resentment. See Black's Law Dictionary (6 Ed.1990) 1124, definition of passion. While it is conceivable that someone in appellant's position on the night in question could have acted out of both fear and passion or rage, nothing in the appellant's testimony or other evidence suggests such a finding in this case. Consequently, we follow this

court's prior holdings in *Tantarelli* and *Thompson* and find that appellant failed to establish the requirements of the subjective test to warrant a voluntary manslaughter instruction. As a result, it was proper for the trial court not to instruct the jury on such a charge. Appellant's first assignment of error is not well taken.

In his second assignment of error, appellant contends that the trial court erred in failing to properly and fully instruct the jury on the affirmative defense concerning the privilege of coming to the defense of another. In its instructions to the jury, the trial court charged the jury as to the defense of his mother, but overruled appellant's request to instruct the jury as to the defense of his friend, Joe West. Appellant contends that the trial court erred when it refused to give this instruction when it mistakenly held that the privilege applied only to the defense of a family member, which did not include Joe West.

On appeal, the state candidly and properly concedes that the trial court was incorrect in holding that the privilege of defending another is limited to the defense of family members. See *State v. Wenger* (1979), 58 Ohio St.2d 336, 340–341, 12 O.O.3d 309, 311–312, 390 N.E.2d 801, 803–804 (recognizing that one may claim justifiable use of force when coming to the aid of a stranger if the stranger was privileged to use the same force). The state argues, however, that the trial court did not err in refusing to grant the instruction as to Joe West because the evidence was insufficient to warrant such an instruction in this case. In particular, the state contends that because a defendant stands in the shoes of the person he is defending, there must be evidence that would support a self-defense instruction on behalf of the person defended. Here, Joe West never specifically testified that he personally believed he was in imminent danger of death or great bodily harm and never testified that he believed that using deadly force against Greer was his only means of escape. Consequently, contends the state, Joe West would not have been entitled to a self-defense instruction and, therefore, appellant was not entitled to an instruction as to the defense of Joe West. We do not find the state's argument to be persuasive.

First, we note that the state cites no authority for its specific contention. Rather, the state cites *Wenger, supra,* for the general proposition that a defendant stands in the shoes of the person being aided and that the defendant has no greater right to use force than the person whom he is endeavoring to protect. In *Wenger,* the defendant was charged with assault when he intervened on behalf of a stranger in an altercation which, unbeknownst to the defendant, was caused by the stranger and which involved a plainclothes police officer. The Ohio Supreme Court found that the defendant was precluded from asserting a privilege to come to the aid of a stranger because the stranger had been at fault for originally starting the altercation. See *Wenger, supra,* 58 Ohio St.2d at 339,

12 O.O.3d at 311, 390 N.E.2d at 803 ("A person who intervenes in a struggle and has no duty to do so, acts at his own peril if the person assisted was in the wrong"). Therefore, *Wenger* stands for the simple proposition that one who uses force to intervene in a conflict on behalf of another may not invoke the privilege of defense of another if the person defended was the aggressor in the conflict. *Ellis v. State* (1992), 64 Ohio St.3d 391, 395, 596 N.E.2d 428, 431. However, nothing in *Wenger* stands for the proposition advanced by the state here, *i.e.*, that a person aided by the defendant must testify that he subjectively believed, at the time of the incident, that he was in imminent danger and that the use of force was the only means of escape from the danger. As to this proposition, the state cites no additional authority, and we have found none. But, see, 4 Ohio Jury Instructions (1997) 76, Defense of Another, Section 411.31(5) (requiring that the jury find that the person defended had reasonable grounds to believe and an honest belief that he/she was in imminent danger and that his/her only means of escape was by the use of force).

In fact, the state's position is contradicted by the case law specifically applying the privilege in the context of coming to the defense of a family member. Rather, these cases show that it is the defendant's good faith and reasonable belief in the imminent danger to the person defended and the concomitant need for the use of force, not the knowledge or belief of the person being defended, that warrants the instruction on the privilege. See, *e.g.*, *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279, paragraph one of the syllabus ("If a person in good faith and upon reasonable grounds believes that a family member is in imminent danger of death or serious bodily harm, such person may use reasonably necessary force to defend the family member to the same extent as the person would be entitled to use force in self-defense"); *State v. Sheets* (1926), 115 Ohio St. 308, 310, 152 N.E. 664, 664 (justification is based upon the *bona fides* of defendant's belief, the reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties); *State v. Marsh* (1990), 71 Ohio App.3d 64, 68, 593 N.E.2d 35, 37 ("A person is entitled to use reasonably necessary force, even to the taking of life, to defend his family members if in good faith and upon reasonable grounds he believes that a family member is in imminent danger of death or serious bodily harm"). We find no persuasive reason why the privilege as it relates to the defense of a nonfamily member should be treated any differently. Cf. *Wenger, supra,* 58 Ohio St.2d at 339, 12 O.O.3d at 311, 390 N.E.2d at 803 ("One who intervenes on behalf of a stranger should not stand in better stead than one who intervenes on behalf of a blood relative"). This is especially so given the state's recognition that the privilege is not limited to family members.

We find no persuasive basis to preclude the availability of the privilege simply because the person being defended is unaware of the imminent danger or the necessity for using deadly force. To hold otherwise would lead to the absurd result of precluding the defendant from raising the affirmative defense in any type of ambush situation or any situation in which the person defended is killed or cannot remember the assault. Thus, the fact that Joe West did not see Greer with a knife and may not have fully appreciated the danger he faced should not preclude appellant, who claimed to have seen the knife and claimed to have feared for West's safety, from coming to West's defense.

 For the foregoing reasons, we hold that a defendant is not precluded from asserting the privilege of coming to the defense of another simply because the person defended failed to testify as to his knowledge concerning the danger or the need for the use of deadly force. Rather, a defendant is entitled to an instruction on the privilege if there is evidence sufficient to allow a reasonable jury to find the following:

(1) the defendant had reasonable grounds to believe and an honest belief that the person defended was in imminent danger of death or great bodily harm and that his only means of escape from such danger was by the use of deadly force; and

(2) the person defended was not at fault in creating the situation giving rise to the death of the victim; and

(3) the person defended did not violate any duty to retreat to avoid the danger. Cf. 4 Ohio Jury Instructions (1997) 76, Defense of Another, Section 411.31(5).

 Here, appellant presented evidence going to each of these elements. In particular, appellant presented evidence that Joe West was not at fault in creating the fight at the Aragon Lounge, that Joe West was not able to retreat from the danger posed by Greer and others, that appellant reasonably and honestly believed that Greer posed a threat to Joe West, and that the appellant had an honest and reasonable belief that striking Greer with the bat was the only means of protecting West. While this evidence was not unassailable or without contradiction, a reasonable jury could have found that appellant struck and killed Greer in defense of Joe West. Therefore, the trial court erred in failing to instruct the jury as to the privilege of coming to the defense of Joe West. Appellant's second assignment of error is well taken.

Because our decision on appellant's second assignment of error is dispositive of the matter before us, we find that appellant's third and fourth assignments of error are rendered moot.

For the foregoing reasons, appellant's first assignment of error is overruled, appellant's second assignment of error is sustained, and appellant's third and

fourth assignments of error are moot. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed
and cause remanded.*

JOHN C. YOUNG and TYACK, JJ., concur.