DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. The jury found Jason Bryan, defendant below and appellant herein, guilty of aggravated assault in violation of R.C. 2903.12(A)(1).
 {¶ 2} Appellant raises the following assignments of error for review:
 {¶ 3} First Assignment of Error:
"The trial court committed reversible error when it instructed the jury on aggravated assault because as a matter of law the alleged provocation did not constitute serious provocation reasonably sufficient to incite a person to use deadly force and thus did not meet the objective portion of the aggravated assault standard."
 {¶ 4} Second Assignment of Error:
"The trial court erred in instructing the jury on aggravated assault because there was no evidence to support a conclusion that the subjective component of the prov[o]cation analysis was met (i.e. there was no evidence that appellant was actually in a sudden fit of passion or sudden fit of rage)."
 {¶ 5} Third Assignment of Error:
"The trial court committed reversible error in denying defendant's Crim.R. 29 motions for acquittal because the finding of guilty on the charge of aggravated assault was not supported by a sufficiency of evidence and is not supported by the weight of the evidence."
 {¶ 6} Fourth Assignment of Error:
"The trial court committed reversible error when it instructed the jury on aggravated assault because as a matter of law the aggravated assault instruction was incompatible with the instruction on self-defense pursuant to State v. Nolton andState v. Comsa."
 {¶ 7} On April 8, 2001, appellant and his brother, Jared Bryan, learned that their mother was having an affair with a neighbor, Jim Jones. Later that day, a physical altercation occurred between appellant, Jared, and Jones. As a result of the altercation, on March 26, 2002, the Gallia County Grand Jury returned an indictment charging appellant with felonious assault, in violation of R.C. 2903.11(A)(1).
 {¶ 8} On November 18, 2002, the trial court conducted a jury trial. At trial, the victim, Jones, explained his version of the altercation. On April 8, 2001, Jones was mowing his yard with a riding lawn mower. Appellant and Jared drove up the driveway and stopped to talk with Jones. Jones stated that the discussion was cordial. Jones asked the boys about a dirt bike that they had for sale and they stated that they already sold it to someone else. Jones stated that he remained interested in the bike and that he had spoken to their mother about the bike. The boys left and returned to their house. Jones continued mowing his grass. About fifteen minutes later, the boys returned in the car and stopped in the driveway. Jones stated that as the boys stopped the car, they did not act like anything was wrong and did not seem upset. Jones testified that appellant exited the car "and was going hey, hey, and [Jones] was like what, you know, [he] throttled [the] mower down. [Appellant] was like, Nosey can't come up with the money for that bike, he said are you still interested in it." Jones stated that he would like to see the bike and appellant started telling him about the bike. Jones explained that neither appellant nor Jared acted like anything was wrong but "[t]he next thing [Jones] know[s] [he's] getting hit in the back of the head about 10 times by [appellant]." Jones stated that Jared then knocked Jones off of the mower. Jones testified that as he lay on the ground, the boys continued to beat him. Jones stated that he was not able to defend himself and that the boys kicked him several times.
 {¶ 9} Russell Saunders, who lives near Jones, witnessed the altercation. Saunders stated that he was cleaning his driveway and he saw the Bryans' car stopped by Jones and saw that they were talking. He saw the car drive to the boys' home. Later, he noticed that the car had returned and he heard a loud conversation. He looked at Jones' property and Saunders observed Jones standing in the middle of his back yard and the Bryans standing several feet from him. Saunders saw one of the Bryan boys "basically tackle [Jones] just like a football tackle." Saunders did not see Jones throw any punches at the boys.
 {¶ 10} Appellant testified that he and Jared were returning home when they encountered Jones. They briefly spoke. As they pulled away from Jones, Jared realized that Jones was the man with whom their mother was having an affair. When appellant and Jared returned home, their mother had informed her husband about the affair and the home's atmosphere was emotionally charged. Appellant and Jared decided to leave the house. As they drove down the driveway, they saw Jones riding his lawn mower. Appellant asked Jared to stop the car. Appellant stated that he wanted to talk to Jones and tell him that the motorcycle deal "was absolutely ignorant." Appellant exited the car to approach Jones and Jones shut off the lawn mower. Appellant stated: "Jim this is not about a motorcycle. * * * [Y]ou do not want to buy a motorcycle. * * * [W]e just witnessed my mom confessing that you've been sleeping with her." Appellant told Jones to "just stay away from her." Appellant claimed that Jones then "just kind of grabbed my left arm and was like, what the hell are you talking about. And kind of you know, swung at me, and I tried to back away from him." After Jones swung at him, appellant "came across and hit him right in the side of the head."
 {¶ 11} Jared testified that he and appellant decided to leave their house after learning of their mother's affair with Jones. He stated that when appellant saw Jones still outside on his lawn mower, appellant told Jared to stop the car. Jared claimed that appellant wanted to tell Jones to stay away from their mother. Jared stated that he saw Jones swing at appellant and grab him. Jared then observed appellant swing back. Jared stated that he pushed Jones off of appellant.
 {¶ 12} At the close of the evidence, the prosecution requested the court to give the jury an aggravated assault instruction. Appellant vehemently objected and contended that the evidence did not support such an instruction. The prosecution, however, asserted that the evidence showed that the boys were upset after learning about their mother's affair and that this fact satisfied the provocation element. The trial court agreed with the prosecution and gave the jury the aggravated assault instruction.
 {¶ 13} On November 20, 2002, the jury found appellant guilty of aggravated assault.[1] Subsequently, appellant filed a written motion for judgment of acquittal. On January 6, 2003, the trial court overruled the motion. The court stated that it "believed at the trial of this cause and still believes that sufficient evidence of serious provocation was presented which required an instruction on the offense of aggravated assault." Appellant filed a timely notice of appeal.
 I {¶ 14} Appellant's first and second assignments of error both challenge the propriety of the trial court's decision to instruct the jury on aggravated assault. We jointly consider the two assignments of error.
 {¶ 15} Appellant asserts that the trial court should not have given the jury an aggravated assault instruction. Appellant contends that the evidence presented at trial does not show (1) serious provocation reasonably sufficient to incite a person into using deadly force, or (2) that appellant acted in a sudden fit of passion or rage. Appellant contends that the evidence does not show sufficient provocation because "(1) the alleged provocation was `mere words' (hearsay about his mother's affair); and (2) those mere words were not even uttered by the alleged victim so there was no provocation `occasioned by the victim' * * *. Indeed, the sole `provocation' in this case was that [a]ppellant learned through statements from his brother and his mother that the alleged victim was having an affair with his mother." Appellant further argues that the evidence fails to show that he was, in fact, provoked.
 {¶ 16} Appellee, contrary to its position at trial, agrees with appellant that his learning of the affair did not constitute sufficient provocation to justify the aggravated assault instruction. Nevertheless, appellee contends that the record contains sufficient evidence of provocation to warrant the aggravated assault instruction. Appellee asserts that the provocation occurred not as a result of appellant learning of his mother's affair and that the victim was the man with whom she had the affair, but as a result of the victim acting aggressively when appellant approached the victim to discuss the affair. Appellee argues that the victim's conduct in grabbing and swinging at appellant constitutes sufficient provocation. Appellee further contends that the same evidence that supported the self-defense instruction supported the aggravated assault instruction. Appellee asserts: "A person who reasonably believes he is in danger of death or great bodily harm necessarily is acting under a sudden passion sufficient to provoke him into using deadly force. The `sudden passion' described in the mitigating circumstance is not limited to anger. Fear is a `sudden passion.'"
 {¶ 17} Appellant counters that sufficient provocation does not exist, and an aggravated assault instruction is not warranted, simply because evidence establishes that the victim grabbed or punched the defendant. Appellant further asserts that fear does not sufficiently demonstrate serious provocation.
 {¶ 18} Generally, a trial court has broad discretion in deciding how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is "`a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'" State v. Lessin (1993), 67 Ohio St.3d 487,493, 620 N.E.2d 72 (quoting State v. Nelson (1973),36 Ohio St.2d 79, 303 N.E.2d 865, paragraph one of the syllabus).
 {¶ 19} In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See id. at 494. A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction. State v. Mitts (1998),81 Ohio St.3d 223, 228, 690 N.E.2d 522. If, however, the evidence does not warrant an instruction or if an instruction is not appropriate in light of the crime charged, the trial court is not obligated to give the instruction. See Lessin,67 Ohio St.3d at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was sufficient to support the requested charge or that the requested instruction was pertinent to the crime charged. See Mitts;State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; see, also, State v. Elijah (July 14, 2000), Montgomery App. No. 18034. We note that in general, an abuse of discretion may be found if the trial court's attitude was unreasonable, arbitrary or unconscionable. See, e.g., Statev. Montgomery (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167.
 {¶ 20} In a felonious assault trial, a trial court must instruct the jury on aggravated assault when sufficient evidence of serious provocation exists.[2] State v. Mack (1998),82 Ohio St.3d 198, 200, 694 N.E.2d 1328; see, also, State v.Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph four of the syllabus). To determine whether sufficient evidence of serious provocation exists, a trial court must employ a two-part inquiry. First, the court must objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. Mack, 82 Ohio St.3d at 201. "`If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" Id. (quoting Shane,63 Ohio St.3d at 634-45).
 {¶ 21} In examining whether the provocation is reasonably sufficient to bring on a sudden passion or fit of rage, the Ohio Supreme Court has provided the following guidance: "`Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.'"Id. at 200 (quoting Deem, paragraph five of the syllabus. "[T]he provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" Id. (quoting Shane, 63 Ohio St.3d at 634-45).
 {¶ 22} Generally, neither words alone nor fear itself will constitute evidence of serious provocation. See id. ("[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations"; and "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.").
 {¶ 23} In Deem, the court determined that the provocation was not reasonably sufficient to bring on a sudden passion or fit of rage; thus, an aggravated assault instruction was not warranted. In Deem, the defendant and the victim had been involved in a romantic relationship. The couple subsequently ended their relationship. After a brief attempt to reconcile, each filed criminal charges against the other stemming from different confrontations. One day, the defendant waited in his car at a roadside park for the victim to pass by in her car on her way to work. After she drove by, the defendant followed her in his car, pulled alongside her, and motioned for her to pull to the road side. At some point, the cars bumped and eventually the defendant forced the victim's car off the road and into a ditch. The defendant stopped his car and went to the victim's car to attempt to convince her to open her window. When she refused, the defendant returned to his car, obtained a hammer, returned to the victim's car and smashed the driver's side window. Witness testimony established that the defendant reached through the broken window and stabbed the victim numerous times. The court concluded, as a matter of law, that the stormy relationship between the parties and the victim's alleged bumping of the defendant's car did not constitute sufficient provocation.
 {¶ 24} Subsequent cases have held that a victim's simple pushing or punching does not constitute sufficient provocation to warrant an aggravated assault instruction. See, also, State v.Koballa, Cuyahoga App. No. 82013, 2003-Ohio-3535 (concluding that sufficient provocation did not exist when the victim grabbed the defendant by the testicles and the arm); State v. Poe (Oct. 6, 2000), Pike App. No. 00CA9 (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation). State v.Pack (June 20, 1994), Pike App. No. 93CA525 ("We find that a mere shove and a swing (which appellant by his own testimony ducked) are insufficient as a matter of law to constitute serious provocation reasonably sufficient to incite or arouse appellant into using deadly force.").
 {¶ 25} In the case at bar, we agree with appellant that the evidence presented at trial did not establish that the alleged provocation was reasonably sufficient to bring on a sudden passion or fit of rage sufficient provocation. Our review of the evidence reveals that the victim grabbed appellant and attempted to hit him. Such evidence is not, as a matter of law, sufficient evidence of serious provocation. See Pack; Koballa; Poe.
 {¶ 26} Additionally, our review of the trial court proceeding reveals that no evidence exists regarding the subjective component (i.e. whether appellant actually acted under a sudden fit of passion or rage). The record does not contain any evidence regarding appellant's mental state to establish that appellant acted under the influence of passion or a sudden fit of rage. Appellant stated that he struck the victim after the victim grabbed his wrist and attempted to punch him. Appellant did not, however, state that the victim's conduct threw him into a fit of passion or rage. See State v. Ratcliff, Franklin App. No. 01AP-1349, 2002-Ohio-3727 (concluding that evidence the defendant was scared and the victim lunged at the defendant with a knife did not show that the defendant acted under a sudden fit of passion or rage); State v. Johnson (July 12, 2001), Cuyahoga App. No. 78327 (stating that the evidence failed to show that the defendant acted under a sudden fit of passion or rage when the defendant claimed that he struck the victim in response to the victim's pushes); State v. Maggard (June 4, 1999), Montgomery App. No. 17198 (concluding that evidence did not show that the defendant acted under a sudden fit of passion or rage when the defendant's testimony was simply that he was afraid and that he shot in self-defense). To the extent that the prosecution asserts that appellant was afraid of the victim, we again note that "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." Mack, 82 Ohio St.3d at 201. Thus, after our review of the evidence and the applicable authority, we believe that the trial court abused its discretion by instructing the jury that it could convict appellant of aggravated assault.
 {¶ 27} We also disagree with the prosecution that the same evidence that supports a self-defense instruction may also support an aggravated assault instruction. To warrant a self-defense instruction, a defendant must present evidence on the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Barnes (2002), 94 Ohio St.3d 21, 24,759 N.E.2d 1240. As we noted above, an aggravated assault instruction is warranted when evidence exists that the victim caused serious provocation and that the defendant acted under a sudden fit of passion or rage. The elements of self-defense and aggravated assault are not sufficiently similar that proof of one always proves the other. "An individual can commit the offense of aggravated assault without acting in self-defense. Conversely, one can act in self-defense and not act under the influence of sudden passion or fit of rage." State v. Johnson, Cuyahoga App. No. 81814, 2003-Ohio-4180. See, also, State v. Harris (1998),129 Ohio App.3d 527, 718 N.E.2d 488.[3]
 {¶ 28} Accordingly, based upon the foregoing reasons we hereby sustain appellant's first and second assignments of error and we reverse the trial court's judgment. In light of our disposition of appellant's first and second assignments of error, appellant's remaining assignments of error are rendered moot. See App.R. 12(A)(1)(c).
Judgment reversed and cause remanded for further proceedings consistent with this opinion.
Kline, P.J., and Harsha, J., concur in judgment and opinion.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and the cause remanded for further proceedings. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] Jared was also charged with felonious assault. At the conclusion of the jury trial, the jury acquitted Jared of the felonious assault charge and an aggravated assault charge.
[2] The elements of aggravated assault and felonious assault are identical except that aggravated assault contains the mitigating element of serious provocation. State v. Mack
(1998), 82 Ohio St.3d 198, 200, 694 N.E.2d 1328. R.C.2903.11(A)(1) defines felonious assault as: "No person shall knowingly * * * [c]ause serious physical harm to another." R.C.2903.12(A)(1) sets forth the offense of aggravated assault: "No person, while under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another."
[3] In Harris, at 129 Ohio App.3d 534-535, 718 N.E.2d 488,493, the court wrote:
"Appellant incorrectly contends that the same evidence that supported his claim of self-defense and defense of others also supported his request for an instruction on voluntary manslaughter. As noted above, voluntary manslaughter requires that the defendant be under the influence of sudden passion of a fit of rage. Thus, this court has held that evidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute. See State v. Tantarelli (May 23, 1995), Franklin app. No. 94APA11-1618, unreported, 1995 WL 318730 (testimony that defendant was dazed, confused, and scared was insufficient to show sudden passion or fit of rage); State v.Thompson (Feb. 23, 1993), Franklin App. No. 92AP-1124, unreported, 1993 WL 51114 ('Self defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage').
While appellant relies extensively on this court's decision inState v. Roddy (Nov. 17, 1981), Franklin App. No. 81AP-499, unreported, 1981 WL 3600, for the proposition that fear for one's own safety is sufficient to warrant a voluntary manslaughter instruction, that reliance is misplaced. At the time Roddy was decided, the voluntary manslaughter statute required only that the defendant establish that he was `under extreme emotional stress.' See id. at 3. However, given that voluntary manslaughter now requires that the defendant be under the influence of `sudden passion or fit of rage,' the position advanced by appellant and supported by Roddy cannot now be maintained. See Tantarelli
and Thompson, supra. Simply put, `[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.' State v. Mack
(1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328-1331 (upholding refusal to grant an aggravated assault instruction when defendant testified that he acted out of self-defense)."