NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0111n.06

No. 18-3519

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 12, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RIODEJUONEROL HUDSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| CHARLES BRADLEY, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. In August 2010, Riodejuonerol Hudson and a neighbor fought in the street. After the fight ended, Hudson retreated to his house and returned with a knife. He and the neighbor fought again. Hudson stabbed the neighbor in the neck; the neighbor later died of the wound. At trial, Hudson testified that he had been attempting to protect both himself and his mother. But although the jury was instructed on self-defense, Hudson's trial counsel never requested a "defense of another" instruction. The jury found Hudson guilty of murder. Hudson appealed, but his appellate counsel did not argue that his trial counsel had performed ineffectively by failing to request the instruction. The Ohio Court of Appeals affirmed his conviction. Hudson later brought this 28 U.S.C. § 2254 petition, arguing that appellate counsel's failure to raise trial counsel's inadequacies constituted ineffective assistance of appellate counsel. But Hudson has failed to show the requisite prejudice from trial counsel's failure to request the instruction. We thus AFFIRM the district court's decision denying Hudson's petition.

I.

In August 2010, Hudson went to a hospital where his girlfriend was about to have a baby. *State v. Hudson*, No. 96986, 2012 WL 1067888, at *1 (Ohio Ct. App. Mar. 29, 2012). But Hudson had forgotten his seizure medicine, so his mother drove him home to get it. *Id.* Hudson and his mother parked outside their house, where Hudson saw his neighbor, Mario Seaborn, drinking alcohol. *Id.* Hudson testified that Seaborn began yelling profanities and threatening him. *Id.* Hudson and Seaborn eventually fought; Hudson hit Seaborn with a bottle and Seaborn struck Hudson with a chain that Seaborn wore around his neck. *Id.* The fight ended, and Hudson went into his house where he retrieved both his medicine and a knife. *Id.* Witnesses then saw Hudson run out of the house toward Seaborn; Hudson testified that he showed Seaborn the knife and asked whether he could leave. *Id.* Seaborn swung his chain at Hudson and the two began fighting again. *Id.* Eventually, Seaborn fell to the ground, bleeding from the neck; Hudson dropped the knife and left. *Id.* Seaborn died of the knife wound five months later. *Id.*

Hudson went to trial where he testified that Seaborn had been threatening both him and his mother. *Id.* The trial court instructed the jury on self-defense, *id.* at *2, but Hudson's trial counsel never asked the judge to instruct the jury as to "defense of another" for Hudson's alleged defense of his mother. The jury found Hudson guilty of murder, and he was sentenced to a prison term of fifteen years to life. *Id.* Hudson's appellate counsel raised several issues on direct appeal but did not argue that trial counsel had been ineffective for failing to request the defense of another instruction. *See id.* at *2–5. The Ohio Court of Appeals affirmed Hudson's conviction. *Id.* at *5.

Hudson obtained new counsel who filed an application to reopen Hudson's appeal pursuant to Ohio App. R. 26(B), arguing that appellate counsel had been ineffective for failing to raise trial counsel's ineffectiveness in failing to request the defense of another instruction. *State v. Hudson*,

No. 96986, 2012 WL 5288762, at *1 (Ohio Ct. App. Oct. 23, 2012). The Ohio Court of Appeals denied the application, holding that Hudson could establish neither inadequate performance nor prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). *Hudson*, 2012 WL 5288762, at *2. The Ohio Supreme Court declined to accept Hudson's appeal. *State v. Hudson*, 983 N.E.2d 370 (Ohio 2013) (table).

Hudson then filed this 28 U.S.C. § 2254 petition, asserting among other claims that appellate counsel had been ineffective for failing to raise trial counsel's ineffectiveness as to the jury instructions. The district court denied the petition, and this court granted a certificate of appealability on Hudson's claim of appellate counsel's ineffectiveness. *Hudson v. Bradley*, No. 18-3519, slip op. at *5 (6th Cir. Sept. 4, 2018) (order).

II.

The first question is whether the Ohio courts decided Hudson's claim on the merits. If so, then we apply the deferential standard of review found in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Because the Ohio Supreme Court's decision denying Hudson's petition for review was a summary denial, we "look through" to the Ohio Court of Appeals' decision, as that decision was the "last reasoned state-court opinion" on the matter. *Barton v. Warden*, 786 F.3d 450, 462 (6th Cir. 2015) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991)).

We have little trouble concluding that the Ohio courts decided Hudson's claim on the merits. Ohio allows a defendant who alleges ineffective assistance of appellate counsel to apply to re-open his appeal through a process outlined in Ohio Appellate Rule 26(B). In his 26(B) application, Hudson made the same argument he makes here—that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to request the defense of

another instruction. *Hudson*, 2012 WL 5288762, at *1. Before rejecting Hudson's claim, the Ohio Court of Appeals stated the facts underlying the case, discussed the *Strickland* standard, and clarified how that standard applies when examining appellate counsel's ineffectiveness. *Id.* at *1–2. The court rejected Hudson's 26(B) application because Hudson had failed to demonstrate either appellate counsel's deficient performance or prejudice therefrom. *Id.* at *2.

As to counsel's alleged deficiency, the court clarified that "appellate counsel would have had to overcome the presumption that trial counsel's plan . . . was sound trial strategy," and concluded that "[i]t is understandable how an appellate counsel . . . would decline to argue this issue when confronted with the difficult burden of undermining trial counsel's strategy of simply arguing self-defense." *Id.* The court also explained that Hudson had failed to show prejudice, noting that "[i]f the jury did not find Hudson's claim of self-defense persuasive, when Hudson was fighting and Seaborn was making threats to Hudson, then there is little reason to believe the jury would have found a 'defense of others' strategy persuasive." *Id.* The court further added that "although the mother testified that Seaborn pushed her down, she did not seem to believe that she was in danger." *Id.* The Ohio Court of Appeals thus plainly considered, and rejected, the merits of Hudson's claim.

Hudson argues, despite the Ohio Court of Appeals' careful discussion, that the Ohio court could not possibly have decided the application on the merits because the court rendered this decision during the "application" stage of Ohio's Rule 26(B) procedure. Under Rule 26(B), "[a]n application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Ohio App. R. 26(B)(5). If granted, the court appoints counsel and "the case . . . proceed[s] as on an initial appeal." *Id.* at 26(B)(6)(a), (7). Here, Hudson's application was denied, and his appeal was not reopened. But that does not

mean, as Hudson argues, that the process was so limited that it is "not worthy of deference under AEDPA." In his application for reopening, Hudson was required to include, among other items, the claims underlying appellate counsel's allegedly deficient performance, *id.* at 26(B)(2)(c), all parts of the record to which he had access, and any supplemental affidavits he would have relied upon. *Id.* at 26(B)(2)(e). The Ohio Court of Appeals was thus well aware of the facts and law surrounding Hudson's claim. This was a decision on the merits. *See also Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (treating denial of Rule 26(B) application as a decision on the merits).

III.

Because the Ohio courts rejected Hudson's claim on the merits, we apply AEDPA deference to Ohio's decision, granting the writ if Ohio's decision denying Hudson's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Although we review the district court's decision denying Hudson's petition de novo, *see Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999), the deference accorded to Ohio's decision under AEDPA is substantial. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The court then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* If fairminded jurists could disagree, then the state's decision must stand. *See id.* at 103. This standard is "difficult" to meet, as "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Hudson faces an even greater challenge because his underlying claim is ineffective assistance of counsel. To prove that he received ineffective assistance of appellate counsel,

Hudson would have had to show both that counsel's performance was deficient and that the deficient performance prejudiced him. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Establishing the ineffective assistance of counsel in a § 2254 petition is "all the more difficult" because both *Strickland* and § 2254(d) are highly deferential. *Harrington*, 562 U.S. at 105. We therefore must be "doubly" deferential when reviewing claims of ineffective assistance of appellate counsel pursuant to § 2254. *Id.*

Hudson cannot succeed under this demanding standard because he has failed to show prejudice. To demonstrate prejudice, Hudson would have had to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the [appeal] would have been different." *Strickland*, 466 U.S. at 694. And the likelihood of a different result "must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. We cannot say that this standard is met because, to succeed, appellate counsel would have had to show that trial counsel's failure to request the defense of another instruction was *itself* ineffective assistance of counsel. *See Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Yet there is scant evidence that trial counsel's failure to request this instruction prejudiced Hudson. And appellate counsel cannot be ineffective for failing to raise a meritless claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

To succeed on a defense of another claim in Ohio, Hudson would have had to show that he had both a "good faith and reasonable belief in the imminent danger to the person being defended." *State v. Harris*, 718 N.E.2d 488, 495 (Ohio Ct. App. 1998). The evidence, however, suggests neither.

Before the initial fight began, Hudson's mother approached Seaborn and pushed him herself. During the initial fight, Hudson's mother approached the fighting men and tried to break them up. Although Hudson testified that Seaborn had told him to choose between his life or his

mother's and that he grabbed the knife to protect his mother, Hudson's actions do not support those assertions. After the initial fight ended, Hudson went back into the house, leaving his mother outside with Seaborn. He not only grabbed a knife, but he took the time to retrieve his medicine and put on a shirt. These actions suggest that Hudson did not believe his mother was in imminent danger. And in any event, it appears that the right to defend another does not apply when the alleged defender is, in fact, the aggressor. *Cf. State v. Turner*, 869 N.E.2d 708, 712 (Ohio Ct. App. 2007). Yet several witnesses testified that, when Hudson came back outside, he ran toward Seaborn, which is when the fight resumed. One witness testified that Seaborn had been walking away from Hudson's house when Hudson ran at him with the knife. Hudson himself admitted that he intentionally showed Seaborn the knife. Thus, although Hudson's mother told the police that Hudson and Seaborn charged at each other as Hudson left his house, and Hudson testified that Seaborn ran at him, conflicting testimony gave the jury a basis to reject that version of the events.

There is, in addition, little evidence that Hudson had an objectively reasonable belief that his mother was in danger of death or serious bodily injury immediately preceding or during the second fight. The second fight took place in the middle of the street, between Hudson's and Seaborn's houses, but Hudson's mother was removed from the action, standing on the sidewalk. At some point, the fighting moved near Hudson's mother's car, and Hudson's mother did testify that she had been hit and knocked to the ground. But a police officer testified that, when making her statement, Hudson's mother said nothing about being knocked to the ground, and Hudson's mother confirmed this. Hudson never testified that he saw Seaborn hit his mother. And when he spoke to the police, Hudson said nothing about his mother being knocked to the ground. And, other than noting that his mother had been knocked to the ground, Hudson offers no evidence to suggest he had a reasonable belief his mother was in danger.

At any rate, Hudson's mother downplayed the seriousness of the violence she claims was directed toward her, asking rhetorically during her trial testimony: "What difference does it make if I got shoved to the ground? I could take a hit." Although Hudson argues that his mother's subjective perception of the risk is irrelevant because Ohio has no requirement that the person being defended recognize the danger, *see Harris*, 718 N.E.2d at 495, this testimony does tend to show that any belief Hudson had regarding his mother's serious peril was not reasonable. Finally, after Hudson stabbed Seaborn, Hudson's mother approached Seaborn and tried to stop the bleeding. Hudson, meanwhile, had left the scene, at his mother's direction. Based on this evidence, we cannot say that the Ohio court's determination that his mother was not in danger was "an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)(2).

Hudson concedes that the jury could have reasonably rejected his claim of self-defense because, after the first altercation, Hudson left the fight scene, went into his house, put on a shirt, and retrieved his medicine in addition to a knife. But Hudson argues that defense of another was stronger than self-defense. We disagree. The jury heard Hudson's mother testify that Seaborn approached Hudson immediately before the second fight and that Seaborn began beating Hudson with the chain. The jury heard Hudson's mother testify that Hudson kept trying to get into her car and leave but that Seaborn kept hitting him with the chain. The jury heard Hudson testify that Seaborn had refused to allow Hudson to leave without a fight; the jury also heard Hudson testify that Seaborn told Hudson to choose between his life or his mother's. Still the jury rejected self-defense, despite being instructed on it by the trial judge. We thus agree with the Ohio Court of Appeals that "[i]f the jury did not find Hudson's claim of self-defense persuasive . . . there is little reason to believe that the jury would have found a 'defense of others' strategy persuasive," given that the only testimony the jury heard regarding danger to Hudson's mother was that Seaborn had,

at some point during the second fight, shoved Hudson's mother to the ground. But this incident was apparently of so little note that neither Hudson nor his mother told the police about it; and Hudson's mother expressly downplayed it.

Because Hudson cannot show prejudice from trial counsel's failure to request the defense of another instruction, we cannot conclude that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness.

* * *

We thus AFFIRM the district court's judgment.