[Cite as *State v. Hart*, 2016-Ohio-8169.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-15-1067

       Appellee                              Trial Court No. CR0201302359

v.

Houston Hart                                      **DECISION AND JUDGMENT**

       Appellant                            Decided:  December 16, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Brad F. Hubbell, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Houston Hart, appeals the judgment entered in the Lucas County Court of Common Pleas after a jury found him guilty of murder in violation of R.C. 2903.02(B).  For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} Houston Hart and Joseph Meyers were residents of the Toledo Gospel Mission. On August 3, 2015, the men quarreled. Hart became enraged, punched Meyers several times, threw him down a flight of stairs, and kicked his head. Meyers was hospitalized and later died of his injuries.

{¶ 3} Hart was charged by indictment with one count of murder in violation of R.C. 2903.02(A) and one count of murder in violation of R.C. 2903.02(B). The matter proceeded to trial by jury. Defense counsel requested a jury instruction on involuntary manslaughter, which the trial court refused to give because, in the court's judgment, no evidence was presented "that would come to the level of serious provocation brought on by the victim" that was "reasonably sufficient to insight [sic] the offender to use deadly force."

{¶ 4} A jury found Hart not guilty of murder in violation of R.C. 2903.02(A), but guilty of murder in violation of R.C. 2903.02(B). The trial court sentenced Hart to life in prison with the eligibility of parole after 15 years. Hart appeals.

## First Assignment of Error

{¶ 5} In his first assignment of error, Hart asserts that "[t]he trial court abused its discretion by denying Appellant's motion to include the lesser included offense of voluntary manslaughter."

{¶ 6} When reviewing a trial court's jury instructions, the standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v.*

2.

*Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.* (Citations omitted.) "When, as in this case, a defendant requests an instruction on an inferior offense, the burden is on the defendant to persuade the fact-finder of the mitigating elements of the offense. *State v. Cobb*, 5th Dist. Stark No. 2014CA00226, 2015-Ohio-2752, ¶ 11, citing *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992).

{¶ 7} If the defendant is charged with murder but wishes a jury instruction on voluntary manslaughter, "the burden is on the defendant to prove the mitigating factors of voluntary manslaughter." *State v. Kenner*, 7th Dist. Monroe No. 04 MO 10, 2006-Ohio-3485, ¶ 19.

{¶ 8} Voluntary manslaughter is an inferior degree offense of murder, meaning that the elements of the crime of voluntary manslaughter are contained within the offense of murder, except for one or more additional mitigating elements. The additional mitigating factors in voluntary manslaughter are that the killing was committed, "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * * ." R.C. 2903.03(A).

{¶ 9} Sudden rage or passion has been described as "anger, hatred, jealousy, and/or furious resentment." *State v. Harris*, 129 Ohio App.3d 527, 535, 718 N.E.2d 488 (10th Dist.1998).

3.

{¶ 10} "To determine whether sufficient evidence of serious provocation exists, a trial court must engage in a two-part inquiry." *State v. Smith*, 5th Dist. Guernsey No. 2012-CA-17, 2013-Ohio-1226, ¶ 66. "First, the court must objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." *Id.* at ¶ 67, citing *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998). If this is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or in a sudden fit of rage.'" *Id.,* quoting *State v. Shane*, 63 Ohio St.3d 630, 634-35, 590 N.E.2d 272 (1992).

{¶ 11} For provocation to be "reasonably sufficient," it must "arouse the passions of an ordinary person beyond the power of his or her control." *Shane* at 635. In most situations, "words alone will not constitute reasonably sufficient provocation to incite the use of deadly force." *Id.* "Provocation, to be reasonably sufficient, must be *serious*." (Emphasis sic.) *Id.* at 638.

{¶ 12} At trial, counsel for the defense requested an instruction on involuntary manslaughter as a lesser included offense of murder. He argued that Hart was provoked by the victim's words and gestures. Hart testified that Joe Meyers was a "provocative person" who had a "way of * * * annoying you like a tick you just couldn't get rid of." He explained:

A. * * * So when I come to the door [of the store] the situation aroused again.

4.

Q. What kind of situation arose?

A. Don't be asking for no money. You know the rules. I said man, just mind your own business. I said you don't even know what happened. So I leave out the store. I didn't even go buy nothing. * * * So I leave out and I go back down to the Mission.

Q. Then what happened?

A. I'm sweating now. So I am standing in the doorway and here he comes. I told him, Joe, from this point on we don't have to talk. We don't have to say nothing else to each other.

Q. Then what happened?

A. So we argue again, and * * * I am just trying to tell him best as I could, Joe, just leave me alone. So next thing I know is he grabs his crotch and he put his hand to my mouth. I am standing on the – Joe was standing on the podium like I'm standing on the podium now. So Joe grabbed his crotch and put it to my mouth.

Q. How close were you * * *?

* * *

A. He was right up on me and he said, pop.

Q. And he went to his mid-section?

A. Yeah

Q. To your mouth. Then what happened, sir?

A. I hit him.

Q. Okay. Then what happened?

A. To be truthful, seriously, I really couldn't tell you from point to point. All I know is that I just blanked.

Q. So you just blanked after that?

A. Yeah, I mean – I mean I couldn't see nothing. I couldn't hear nothing. I was just – I don't know, I was just – I was just gone. And I was so much of in a fit of rage that I just lost control of myself, and I hate to say it is that I did assault the man badly. I just couldn't stop myself. I wasn't trying to, as they put it, take his life. I just wanted to beat him up to just leave me alone to say man, just look here, this should be enough just to leave me alone. And I picked him up, and I tried to just throw him against the wall, and I missed the wall, and he winded up in the basement. And I went down there, and I hit him a couple more times and I stepped on his face * * *.

Q. What did you do after that, sir?

A. I had a cut on my hand, and I went in the bathroom and washed my hand off. * * * I went upstairs, and I sat down.

Q. Then what happened after you sat down?

A. I was still comatose, and the police come, viewed the situation, and they said I was sitting up there in the living area, and it was bad. When they come I just stood up. That was all. Man. * * * I told them I did it. I assaulted Joe. And they arrested me.

{¶ 13} Several men were in the Mission when the events occurred and testified that they witnessed Hart punch, throw, and kick Meyers. A few of the men heard Hart and Meyers quarrel. None, however, saw Meyers make the obscene gesture that triggered Hart's first punch.

{¶ 14} Under the circumstances of this case, we find that the victim's nagging about Mission rules coupled with the obscene gesture was not sufficient to "arouse the passion of an ordinary person beyond the power of his or her control." *See Shane*, 63 Ohio St.3d 635, 590 N.E.2d 272. Thus, we agree with the lower court's determination there was not sufficient evidence of serious provocation. Accordingly, the trial court did not abuse its discretion denying defense counsel's request for the involuntary manslaughter instruction. Hart's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 15} In his second assignment of error, Hart asserts that "[t]he trial court abused its discretion and erred to the prejudice of Appellant by imposing financial sanctions without consideration of Appellant's ability to pay." Hart argues that at the time of

sentencing, he was "49 years old, * * * receiving Social Security and had been living in a mission."

{¶ 16} Pursuant to R.C. 2947.23, costs of prosecution are to be imposed in "all criminal cases." Such costs may be assessed against an indigent prisoner because they are not based upon the offender's ability to pay. *State v. Jobe*, 6th Dist. Lucas No. L-07-1413, 2009-Ohio-4066, ¶ 75. "Costs of prosecution" includes fines and costs imposed under R.C. 2929.18(A)(4).

{¶ 17} In *State v. Graves*, 6th Dist. Lucas No. L-14-1171, 2015-Ohio-3696, ¶ 12, we indicated that "defendants are required to submit any motions to the trial court seeking consideration of waiver regarding fines and costs at the time of sentencing. If this is not done, the issue is * * * waived and rendered res judicata." *Id.* at ¶ 12, citing *State v. Winfield*, 6th Dist. Lucas No. L-13-1251, 2014-Ohio-3968, ¶ 6.

{¶ 18} Costs of appointed counsel may be assessed pursuant to R.C. 2941.51(D) where the offender reasonably may be expected to have the means to pay some part of the costs of his counsel. *Jobe* at ¶ 80. In its sentencing entry, the trial court found that Hart had or may reasonably be expected to have "the means to pay all or part" of the costs of assigned counsel.

{¶ 19} During trial, Hart testified that he worked at the Mission Mall for several years. Nothing in the record evidences an inability to work upon release from prison. A trial court looks to the totality of the record to determine if a defendant has the ability to pay the costs imposed. *See State v. Flowers*, 6th Dist. Lucas No. L-14-1141, 2015-Ohio-

8.

908, ¶ 11.  We find the record possessed sufficient evidence in support of the disputed trial court finding.  Wherefore, Hart's second assignment of error is not well-taken.

## Conclusion

{¶ 20} We find that substantial justice has been done in this matter.  The judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, P.J.
CONCUR.

_____
JUDGE