[Cite as *State v. Ramirez*, 2018-Ohio-1870.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No. L-17-1076

      Appellant                                  Trial Court No. CR0201601940

v.

Ramiro Ramirez                                  **DECISION AND JUDGMENT**

      Appellee                                   Decided:  May 11, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Katherine
Ross-Kinzie, Assistant State Public Defender for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This case is before the court on the appeal of appellant, state of Ohio, from

the March 7, 2017 judgment of the Lucas County Court of Common Pleas granting

appellee, Ramiro Ramirez, a new trial.  In view of the trial court's conclusion that there

was insufficient evidence to sustain the jury's verdict of voluntary manslaughter, we need not reach the merits of the state's arguments as the state's appeal is both constitutionally and statutorily barred. Thus, for the reasons that follow, we dismiss the state's appeal.

{¶ 2} The state of Ohio set forth three assignments of error:

1. Whether the trial court abused its discretion in granting the Appellee's post-verdict Motion for New Trial when there was sufficient evidence, which if believed by the jury and when viewed in a light most favorable to the State, supported a finding that Appellee acted under the influence of sudden passion or in a fit of rage.

2. Whether the trial court erred and abused its discretion and it applied the wrong legal standard to the Motion for New Trial when it confused the standard for the sufficiency of the evidence with the standard for the manifest weight of the evidence.

3. Whether the trial court abused its discretion and committed reversible error when it engaged in a post-verdict discussion with the jury about the case, which tainted the judge's subsequent ruling on a post-verdict defense Motion for New Trial, where there was no transcription of the discussion, and where counsel was not present.

**Facts**

{¶ 3} On the night of April 16, 2016, Ramirez and two friends, including Michael Lucas, were eating pizza and standing by Ramirez's car, which was parked in front of the

2.

bowling alley on Starr Avenue, in Toledo, Ohio. Meanwhile, Dale Delauter and his girlfriend, Melissa McCloskey ("girlfriend"), arrived at Delauter's home which was located across the street from the bowling alley. The couple, who had been at a bar, were intoxicated and stood outside of Delauter's house arguing.

{¶ 4} Ramirez and his friends observed the couple arguing, and Lucas yelled at the couple not to engage in domestic violence. Lucas then went across the street to where the couple was arguing, and recorded them on his cell phone. The couple stopped arguing with each other and started having words with Lucas, which included Delauter calling Lucas a racial slur. Lucas posted videos of the couple on the social media site, Snapchat. Delauter then went into his home and the girlfriend informed Lucas that Delauter was getting his gun and Lucas better leave. Ramirez, who still standing by his car in front of the bowling alley, retrieved his pistol from the console of the car and took cover behind the car. Ramirez had a permit to carry a concealed weapon.

{¶ 5} There were conflicting versions as to what happened next. The state said there was no evidence that Delauter had a gun. Ramirez said Delauter came out of his house and onto the front porch carrying a shotgun. Someone yelled for Delauter to put his gun down. Delauter then cocked the shotgun and aimed it in the direction of Ramirez's car. Ramirez thought Delauter had fired the shotgun so Ramirez fired his pistol at Delauter. Delauter ran back into his house and collapsed on the floor. Delauter had been shot several times. Delauter was taken to the hospital where he died. Later,

3.

near where Delauter had collapsed, police found his shotgun, which was unloaded but pumped.

{¶ 6} Ramirez was indicted for voluntary manslaughter. A jury trial commenced, and the state presented its case. Ramirez moved for judgment of acquittal, pursuant to Crim.R. 29; the motion was denied. The jury found Ramirez guilty of voluntary manslaughter. Ramirez filed a motion for new trial, which the state opposed. The trial court found there was insufficient evidence sustaining the jury's verdict, and granted Ramirez a new trial. The state filed a motion for leave to appeal; the motion was granted.

## Voluntary Manslaughter

{¶ 7} R.C. 2903.03(A) provides:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *.

## Trial Court's Order

{¶ 8} The trial court, in its March 7, 2017 order granting new trial, stated in relevant part:

Rule 29 Arguments

Defendant argued that the evidence produced by the state failed to sufficiently establish all essential elements of the crime of Voluntary Manslaughter. The state's response was twofold: first, there was sufficient

evidence, when viewed in a light more favorable to the state, of provocation, passion and rage; second, the law presumes these elements under Supreme Court precedent.

\* \* \*

But the statute goes further to require that the victim must have provoked Defendant into this sudden fit of rage and/or passion. The state's position has been that Mr. Delauter did not even have the shotgun when he was on the porch. Then how could he have provoked Defendant? Mr. Delauter called Mr. Logan a racial slur, but there was no evidence that Defendant heard that insult or even that he was told of it by Mr. Lucas. Besides, the law is clear that "words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." \* \* \* Moreover, "the trial court must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented…"

\* \* \*

The court found then, as it does now, that the state produced insufficient evidence that the victim provoked Defendant into [a] sudden fit of passion or rage.

However, as noted, the state not only argued the facts; it also argued that provocation, passion and rage are presumed under the law. It was on

5.

this basis that the court overruled Defendant's Crim. R. 29 motion, relying on cases such as *State v. Muscatello*, 55 Ohio St.2d 201, 378 N.E.2d 738 (1978), *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992) * * *. These cases hold that when a defendant is charged with Voluntary Manslaughter, neither the state nor the defendant have the duty to prove that defendant acted under a fit of passion or rage.

These two Supreme Court cases arose from prosecutions for murder or aggravated murder * * *.

This court followed the precedent established in Rhodes, and overruled Defendant's Crim. R. 29 motion.

* * *

Motion for New Trial

* * *

This court holds that the prosecution of a stand-alone charge of voluntary manslaughter (with or without specification) is necessarily accompanied by the obligation upon the state to prove all essential elements of the charge beyond a reasonable doubt. Those elements are described in the statute, and contained in the indictment in this case. In reaching this conclusion, the court is guided by an important holding, ironically contained in a mere footnote of a case from this appellate district:

The syllabus of a case decided by the Ohio Supreme Court constitutes the official opinion of that court. Matter outside the syllabus is not regarded as a decision. The syllabus controls the opinion of individual judges. Where the opinion of the Ohio Supreme Court contains statements not necessary to reach the actual decision and is not part of the syllabus, it is obiter dicta, and is not binding on [inferior courts]. *Williams v. Ward*, 18 Ohio App.2d 37, 39, 246 N.E.2d 780 (6th Dist.1969), fn. 1. [Internal citations omitted.]

The syllabus of *Rhodes* clearly applies to a "defendant on trial for murder or aggravated murder." The syllabus of *Muscatello* also is written in the context of "a prosecution for aggravated murder," * * *.

Conclusion

The court thus finds there was insufficient evidence sustaining the jury's verdict and grants Defendant's motion. * * *

**Analysis**

{¶ 9} To summarize the trial court's order, the court found that for a stand-alone charge of voluntary manslaughter, the state is obligated to prove all of the essential elements of that charge beyond a reasonable doubt. The court further found the state produced insufficient evidence that the victim provoked Ramirez into a sudden fit of passion or rage, and granted Ramirez a new trial.

7.

{¶ 10} In its assignments of error, the state asserted the trial court abused its discretion in granting a new trial when there was sufficient evidence that Ramirez acted under the influence of sudden passion or in a fit of rage. The state also argued the trial court applied the wrong legal standard in ruling on the motion for new trial. Lastly, the state contended the trial court abused its discretion and committed reversible error when it engaged in a post-verdict discussion with the jury.

{¶ 11} Regardless of the state's substantive arguments, we are unable to consider the state's appeal for the following reasons: the Double Jeopardy Clauses of the U.S. Constitution and the Ohio Constitution bar successive prosecutions; and, R.C. 2945.67, which governs appeals by the state, prohibits the state from pursuing an appeal under the circumstances presented here.

**Double Jeopardy**

{¶ 12} In *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the United States Supreme Court found:

> [T]he Double Jeopardy Clause [of the Fifth Amendment to the U.S. Constitution] attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

8.

{¶ 13} The United States Supreme Court has also noted that "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). "Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.*

{¶ 14} In *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), the United States Supreme Court considered circumstances similar to those presented here. After being convicted of murder by a jury, the defendant moved for a new trial. *Id.* at 41. The trial court granted a new trial finding "* * * there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict * * *." *Id.* The court ruled "[t]he trial judge granted the new trial because the state had failed to prove its case as a matter of law * * * and the Double Jeopardy Clause barred the State from prosecuting [defendant] a second time." *Id.* at 44-45. The court followed its holding in *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it has failed to muster in the first proceeding."

{¶ 15} Thus, if a trial court has evaluated the state's evidence and concludes the evidence is legally insufficient to sustain a conviction, that conclusion triggers double

9.

jeopardy protections, and any further proceedings, such as an appeal by the state or a retrial, are barred. *Martin* at 574; *Hudson* at 43-45; *Tibbs* at 42.

{¶ 16} Ohio's constitutional prohibition on double jeopardy, found in Article I, Section 10, Ohio Constitution "'is coextensive with the federal clause' * * * [and] affords no greater double jeopardy protections than the Fifth Amendment." (Citations omitted.) *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 38.

{¶ 17} Here, the jury found Ramirez guilty of voluntary manslaughter, but the trial court ruled that the state produced insufficient evidence on all of the essential elements of voluntary manslaughter. The trial court's finding was a judgment of acquittal, despite the fact that a new trial was granted. Consequently, the Double Jeopardy Clauses preclude the state from appealing the trial court's post-verdict ruling on the sufficiency of the evidence, and from prosecuting Ramirez in a second trial.

## R.C. 2945.67

{¶ 18} R.C. 2945.67 sets forth the only situations in which the state may purse an appeal in a criminal case. It provides, in relevant part:

> A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case, * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * * and may appeal by

leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *.

{¶ 19} Here, since the trial court's ruling represented a judgment acquitting Ramirez of voluntary manslaughter, the trial court's decision was a final verdict within the meaning of R.C. 2945.67, which the state may not appeal.

{¶ 20} Accordingly, the state's appeal is dismissed.  The state is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Appeal dismissed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.