[Cite as *State v. Ramirez*, 2020-Ohio-3905.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1076

        Appellant                                   Trial Court No. CR0201601940

v.

Ramiro Ramirez                                    **DECISION AND JUDGMENT**

        Appellee                                    Decided:   July 31, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Patrick T. Clark,
Assistant State Public Defender, for appellee.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before us on remand from the Supreme Court of Ohio, which

determined that neither double jeopardy principles nor R.C. 2945.67 required our

dismissal of the underlying appeal filed by appellant, the state of Ohio.  *State v. Ramirez*,

--- Ohio St.3d ----, 2020-Ohio-602, --- N.E.3d ----, ¶ 25. Consequently, the matter was remanded to this court for our consideration of the merits of the state's arguments regarding the trial court's grant of appellee's, Ramiro Ramirez, motion for new trial. Because we find that the trial court erroneously concluded that the state's evidence was insufficient to support a charge of voluntary manslaughter, we reverse the trial court's judgment, reinstate the jury's guilty verdict, and remand this matter to the trial court for sentencing.

## II. Facts and Procedural Background

{¶ 2} On April 15, 2016, appellee and his friend, Michael Lucas, were socializing together outside a bar on Starr Avenue in East Toledo. At some point during the evening, Lucas witnessed the decedent, D.D., and the decedent's girlfriend, Melissa McCloskey, arriving at D.D.'s home on Starr Avenue. The couple were intoxicated and arguing with one another. Amused, Lucas decided to approach the couple and record the argument on his mobile phone. At some point, D.D. began to exchange words with Lucas, including at least one racial slur. During this time, appellee remained inside Lucas' vehicle across the street.

{¶ 3} Eventually, McCloskey told Lucas to get off the property. When Lucas failed to comply, D.D. went inside his residence. McCloskey then informed the group that D.D. was going to get his firearm. At this point, appellee exited the vehicle and positioned himself behind the vehicle in a protected posture. Appellee was armed with a

2.

.40 mm semiautomatic pistol, which he brandished at this point and pointed toward D.D.'s residence.

{¶ 4} As Lucas was walking back across the street toward the bar, D.D. appeared from the residence carrying a shotgun. At this point, appellee instructed D.D. to put the gun down. When D.D. ignored appellee's command, appellee fired eight shots at D.D. from a distance of 66 feet. D.D. was struck three times, twice in the left flank and once in the back, right shoulder. Tragically, D.D. succumbed to his injuries after retreating into his house.

{¶ 5} Based on the foregoing, appellee was indicted on May 19, 2016, and charged with voluntary manslaughter in violation of R.C. 2903.03(A), a felony of the first degree, along with an attendant firearm specification pursuant to R.C. 2941.145. The matter proceeded to a jury trial on January 9, 2017. During the trial, appellee moved for an acquittal under Crim.R. 29, arguing that the state did not introduce sufficient evidence of sudden passion or fit of rage to support a voluntary manslaughter conviction under R.C. 2903.03(A). The trial court denied appellee's motion based upon its finding that appellee's use of excessive force operated as a presumption of sudden passion or fit of rage under the Ohio Supreme Court's decisions in *State v. Muscatello*, 55 Ohio St.2d 201, 378 N.E.2d 738 (1978) and *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992).

{¶ 6} Ultimately, the jury returned a verdict of guilty on the sole charge and specification contained within the indictment. Following the verdict, the judge

3.

communicated with the jury outside the presence of the parties. The details of this conversation are unknown.

{¶ 7} Two weeks later, and prior to sentencing, appellee filed a motion for new trial under Crim.R. 33. In his motion, appellee reasserted his sufficiency argument related to the state failing to introduce evidence of the sudden passion or fit of rage component of R.C. 2903.03(A).

{¶ 8} On March 7, 2017, the trial court granted appellee's motion for new trial, concluding, for the first time, that the state failed to establish that appellee acted under a sudden passion or fit of rage. In response to the trial court's decision, the state appealed. After finding that the trial court's grant of a motion for new trial operated as a judgment of acquittal from which the state may not appeal based upon double jeopardy principles and R.C. 2945.67, we dismissed the state's appeal without ruling on the merits of appellee's motion for a new trial. *State v. Ramirez*, 6th Dist. Lucas No. L-17-1076, 2018-Ohio-1870, ¶ 19.

{¶ 9} The state appealed our decision to the Ohio Supreme Court, which reversed our decision, finding that we should have proceeded to the merits of the appeal. *Ramirez*, *supra*, --- Ohio St.3d ----, 2020-Ohio-602, --- N.E.3d ----, at ¶ 25. In its decision, the Ohio Supreme Court remanded this matter back to us for consideration of the merits of the state's arguments.

4.

### III. Assignments of Error

{¶ 10} On appeal, the state asserts the following assignments of error for our review:

1. The trial court abused its discretion in granting the Appellee's post-verdict Motion for New Trial when there was sufficient evidence, which if believed by the jury and when viewed in a light most favorable to the State, supported a finding that Appellee acted under the influence of sudden passion or in a fit of rage.

2. The trial court erred and abused its discretion and it applied the wrong legal standard to the Motion for New Trial when it confused the standard for the sufficiency of the evidence with the standard for the manifest weight of the evidence.

3. The trial court abused its discretion and committed reversible error when it engaged in a post-verdict discussion with the jury about the case, which tainted the judge's subsequent ruling on a post-verdict defense Motion for New Trial, where there was no transcription of the discussion, and where counsel was not present.

### IV. Analysis

{¶ 11} In the state's first assignment of error, it argues that the trial court erred in granting appellee's Crim.R. 33 motion for new trial. In its second assignment of error, the state contends that the trial court applied the incorrect standard of review to appellee's

motion. Because these assignments of error are interrelated, we will address them simultaneously.

{¶ 12} We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990). Under Crim.R. 33(A)(4), a defendant's motion for new trial may be granted where the verdict is not sustained by sufficient evidence. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶ 13} The offense of voluntary manslaughter is set forth in R.C. 2903.03, which provides in relevant part:

(A) No person, *while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force*, shall knowingly cause the death of another or the unlawful termination of another's pregnancy. (Emphasis added.)

{¶ 14} The parties in this case argue over whether the state's evidence was sufficient to establish that appellee was acting under the influence of sudden passion or in a sudden fit of rage when he shot D.D. This argument presumes that the state bears the burden of establishing the foregoing emphasized language in R.C. 2903.03(A) as an

6.

element of the offense of voluntary manslaughter. For the reasons stated below, we find that the highlighted language is not an element of the offense of voluntary manslaughter on which the state bears the burden of proof.

{¶ 15} In *Muscatello*, *supra*, the Ohio Supreme Court examined a prior version of the voluntary manslaughter statute in the context of a prosecution for aggravated murder. In its syllabus, the court held that "[e]xtreme emotional stress, as described in R.C. 2903.03, is not an element of the crime of voluntary manslaughter," but is instead "a circumstance, the establishment of which mitigates a defendant's criminal culpability." *Muscatello* at paragraphs one and two of the syllabus. The court went on in its syllabus to explain that a defendant on trial for aggravated murder need only produce some evidence of the mitigating circumstance in order for the jury to consider the inferior offense of voluntary manslaughter. *Id.* at paragraph four of the syllabus. Importantly, the Supreme Court explained in the body of its decision in *Muscatello* that "*where a defendant originally has been charged with aggravated murder or murder*, the prosecution can be expected to endeavor to prove the elements of the highest offense; it will attempt to disprove the mitigating circumstance. Because only the defendant will gain by establishing the mitigating circumstance, he alone will be concerned with showing its existence." (Emphasis added.) *Id.* at 203-204. Moreover, the court, in a footnote, stated that "the sudden passion or heat of blood necessary to a finding of voluntary manslaughter, and a calculated planning of the same killing, seem mutually exclusive." *Id.* at 205, fn. 5.

7.

{¶ 16} Fourteen years after *Muscatello* was decided, the Supreme Court issued its decision in *Rhodes*, *supra*. Like *Muscatello*, the defendant in *Rhodes* was on trial for murder, not voluntary manslaughter. Following the presentation of evidence, the jury was instructed on voluntary manslaughter and involuntary manslaughter, prompting a question from the jury as to clarification of those terms. Ultimately, the defendant was found guilty of murder. On appeal to the Supreme Court, the defendant raised the issue of

> whether a defendant on trial for murder bears the burden of establishing by
> a preponderance of the evidence that he was "under the influence of sudden
> passion or in a sudden fit of rage, either of which was brought on by serious
> provocation occasioned by the victim that * * * [was] reasonably sufficient
> to incite the * * * [defendant] into using deadly force * * * "—the
> mitigating circumstances of R.C. 2903.03(A)—, in order for a jury to find
> the defendant guilty of voluntary manslaughter rather than murder.

*Rhodes* at 616-617.

{¶ 17} In examining the statute, the Supreme Court found that the crime of voluntary manslaughter is an "inferior degree of murder" that "comprises elements that must be proven by the prosecution and mitigating circumstances that must be established by the defendant." *Id.* at 617; *see also State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). Importantly, the Court went on to state:

8.

If a defendant is not charged with murder or aggravated murder, but rather is on trial for voluntary manslaughter, neither party is required to establish either of the mitigating circumstances. Rather, the court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder. In that situation, the prosecution needs to prove, beyond a reasonable doubt, only that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to demonstrate the existence of a mitigating circumstance.

*Id*. at 618.

{¶ 18} Admittedly, the foregoing language from *Rhodes* was dicta insofar as the defendant in that case was not merely charged with voluntary manslaughter as is the case here. However, the logic of the foregoing language is persuasive whether the voluntary manslaughter charge arises as a standalone charge or an inferior offense of the charge of murder. In either case, the statutory language referring to sudden passion or fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, is treated as a mitigating element.

{¶ 19} Our court has previously stated that voluntary manslaughter is "an inferior degree offense of murder, meaning that the elements of the crime of voluntary

9.

manslaughter are contained within the offense of murder, *except for one or more additional mitigating elements*." (Emphasis added.) *State v. Hart*, 6th Dist. Lucas No. L-15-1067, 2016-Ohio-8169, ¶ 8. In *Hart*, we went on to note that sudden passion or fit of rage was a mitigating factor for voluntary manslaughter, and therefore the burden was on the defendant to establish it as a prerequisite to a jury instruction on voluntary manslaughter in a murder case. *Id*. at ¶ 7.

{¶ 20} The identification of voluntary manslaughter as an inferior offense, as opposed to a lesser-included offense, is important. The distinction between these two types of "lesser offenses" was articulated by the Supreme Court of Ohio in *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988). There, the court defined an offense as an inferior offense where its elements are identical to or contained within the more serious offense, except for one or more additional mitigating elements, "which will generally be presented in the defendant's case." *Id*. at 209. By contrast, a lesser-included offense is one in which "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *Id.* at paragraph three of the syllabus.

{¶ 21} As noted above, we have previously held that voluntary manslaughter is an inferior offense of murder, which means that its elements are identical to or contained in the offense of murder. Notably, the state is not required to prove that a defendant acted

under a sudden passion or fit of rage, brought about by serious provocation, in order to prove murder. Thus, the state is not be required to establish sudden passion or fit of rage to prove voluntary manslaughter.

{¶ 22} Further support for the notion that sudden passion or fit of rage, brought about by serious provocation, is not an element of voluntary manslaughter for the state to establish can be found by looking at the corollary distinction between aggravated assault and felonious assault. Like the relationship between voluntary manslaughter and murder, the only difference between aggravated assault and felonious assault is the addition of the mitigating circumstance of sudden passion or fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. *See State v. Schofield*, 6th Dist. Lucas No. L-93-008, 1994 WL 30506, *5 (Feb. 4, 1994) ("The mitigating circumstances contained in the voluntary manslaughter statute, R.C. 2903.03(A), are identical to those listed in the aggravated assault statute, R.C. 2903.12(A), and the relationship that exists between murder or aggravated murder and voluntary manslaughter is the same that exists between felonious assault and aggravated assault.").

{¶ 23} The connection between voluntary manslaughter and aggravated assault was acknowledged by the Second District in *State v. McKinney*, 2d Dist. Miami No. 87 CA 20, 1987 WL 18829 (Oct. 22, 1987), a case in which the defendant was charged directly with aggravated assault, rather than felonious assault. In examining the interplay between aggravated assault and felonious assault, the court found:

11.

Significantly, the definition of Aggravated Assault is exactly the same as the definition of Felonious Assault, a more serious felony, except that the [sudden passion or fit of rage component] has been added to the definition of Aggravated Assault. It follows that [this component] is functionally a mitigating circumstance, rather than an element of the offense. In other words, if a person has knowingly caused serious physical harm to another, then, if the underscored language does not apply, he is guilty of the more serious crime of Felonious Assault, but if the underscored language does apply, then he is guilty of the less serious crime of Aggravated Assault.

In this case, the State effectively conceded that the underscored language applied when it secured an indictment charging McKinney with Aggravated Assault, rather than Felonious Assault. Therefore, even if the underscored language were so vague as to offend constitutional due process, that would in no way have prejudiced McKinney, because he has been given the benefit of the mitigation extended by the underscored language.

*Id.* at *2-3; *see also State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 37 (finding that sudden passion or fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, is a mitigating circumstance of aggravated assault, upon which the

defendant bears the burden of proof, and is not a necessary element of the offense upon which the state bears the burden of proof).

{¶ 24} In light of the foregoing, it seems clear that sudden passion or fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, is not an element of voluntary manslaughter, but is instead a mitigating element that must be established by the defendant. Where, as here, the state elects to charge the defendant only with voluntary manslaughter, the defendant is relieved of his burden to establish sudden passion or fit of rage, brought about by serious provocation occasioned by the victim, and that mitigating element is presumed.

{¶ 25} Notably, the state seemingly abandons its argument on appeal that sudden passion or fit of rage is a mitigating element that is presumed, and need not be established by the state, under the facts of this case. Indeed, the state does not reference or rely upon *Muscatello* or *Rhodes* in its appellate brief. Nonetheless, our determination of the sufficiency of the state's evidence necessarily requires us to ascertain the elements of the offense in order to determine whether a trier of fact could have found those elements proven beyond a reasonable doubt. *Smith*, *supra*, 80 Ohio St.3d at 113, 684 N.E.2d 668. Therefore, this issue is not waived simply because the state fails to focus on it in their brief. Further, the issue was initially raised in the trial court, and the court was initially correct when it found that the state did not bear the burden of establishing the mitigating element of sudden passion or fit of rage, either of which is brought on by serious

13.

provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force.

{¶ 26} Although the state does not assert that the mitigating element should be presumed in its appellate brief, the Supreme Court referenced the issue in its decision reversing our prior judgment in this case, and the overarching sufficiency issue is before us on remand. As a predicate to resolving the sufficiency issue, we must consider what elements apply to the offense of voluntary manslaughter. As already discussed, sudden passion or fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, is not an element of voluntary manslaughter. Thus, the state did not need to prove it at trial. *See State v. Sleppy*, 2d Dist. Darke No. 96-CA-1412, 1997 WL 271691, *4, citing *Rhodes* at 618 ("The state need only prove that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to show the existence of mitigating circumstances."). Consequently, the trial court erred in concluding otherwise in its decision on appellee's motion for new trial.

{¶ 27} Appellant does not contend that the state failed to introduce sufficient evidence as to any component of R.C. 2903.03(A) other than the sudden passion or fit of rage component, which is a mitigating element on which the state did not bear the burden of proof. Moreover, our review of the evidence introduced by the state confirms that the state's evidence was sufficient to support the charge of voluntary manslaughter under R.C. 2903.03(A).

14.

{¶ 28} In sum, we find that the trial court abused its discretion in granting appellee's motion for new trial after erroneously concluding that the state's evidence was insufficient on the mitigating element of sudden passion or fit of rage. Accordingly, we find the state's first and second assignments of error well-taken. We hereby reverse the trial court's judgment, reinstate the jury's verdict, and remand the matter to the trial court for sentencing. Our resolution of the state's first and second assignments of error renders the state's third assignment of error moot.

## V. Conclusion

{¶ 29} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is reversed, and this matter is remanded to the trial court for sentencing. The costs of this appeal are assessed to appellee under App.R. 24.

Judgment reversed<br>
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                                                    _____
                                                                 JUDGE

Gene A. Zmuda, P.J.
CONCUR.
                                                                 _____
                                                                 JUDGE

Arlene Singer, J.,
DISSENTS AND WRITES
SEPARATELY.


**SINGER, J.**

**{¶ 30}** The scope of authority of Ohio appellate courts is set forth in App.R. 12(A)(1)(b), which provides "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs." In exceptional circumstances, appellate courts may notice, on their own initiative, obvious or plain errors. *See* Crim.R. 52(B). *See also United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). "The lack of a definitive pronouncement from [the Supreme Court] and the disagreement among the lower courts preclude * * * [a] finding [of] plain error." *State v. Barnes*, 94 Ohio St.3d 21, 28, 759 N.E.2d 1240 (2002).

16.

{¶ 31} The majority raises an issue not argued by the parties on appeal, and resolves the appeal based on this issue: that the state did not have to prove all of the elements of voluntary manslaughter in order for Ramiro Ramirez to be convicted of that crime. While the majority recognizes the state did not argue on appeal that it did not have to prove all of the elements of voluntary manslaughter, the majority determines "this issue is not waived simply because the state did not focus on it in their [sic] brief."

{¶ 32} The majority, in reaching its conclusion on this issue, relies on cases involving crimes with lesser-included or inferior-degree offenses. None of these cases addresses the sufficiency of the evidence of a stand-alone charge of voluntary manslaughter. None of the cases stands for the proposition that with a stand-alone charge of voluntary manslaughter, all elements of the crime do not have to be proven. None of these cases was referenced by the state. Nonetheless, the majority applies the analysis and principles of law of these cases in the context of a stand-alone charge of voluntary manslaughter to decree that the state does not have to prove all of the elements of the crime with which it charged Ramirez.

{¶ 33} The majority, in achieving its result, exceeded the appropriate purview of appellate review. Therefore, I respectfully dissent.

{¶ 34} On the night of April 16, 2016, Ramirez and two friends, including Michael Lucas, were eating pizza and standing by Ramirez's car, which was parked on the street in front of a bowling alley, on Toledo, Ohio's east side. Meanwhile, D.D. and his girlfriend, Melissa McCloskey, arrived at D.D.'s home, in a vehicle driven by D.D. The

17.

home was across the street from the bowling alley. The couple, who had been at a bar, were intoxicated and stood outside of D.D.'s house arguing.

{¶ 35} Ramirez and his friends observed the couple arguing, and Lucas yelled at the couple not to engage in domestic violence. Lucas then went across the street to where the couple was arguing, and recorded them on his cell phone. The couple stopped arguing with each other and started having words with Lucas, which included D.D. calling Lucas a racial slur. Lucas posted videos of the couple on the social media site, Snapchat. D.D. then went into his home and the girlfriend yelled at Lucas that D.D. was getting his gun and Lucas better leave. Ramirez, who still standing by his car, retrieved his pistol from the console of the car and took cover behind the car. Ramirez had a permit to carry a concealed weapon.

{¶ 36} There were conflicting accounts of what occurred next. The state claimed there was no evidence that D.D. had a gun. Ramirez said D.D. came out of his house and onto the front porch carrying a shotgun, and someone yelled at D.D. to put his gun down. D.D. then cocked the shotgun and aimed it in the direction of Ramirez's car. Ramirez thought D.D. had fired the shotgun so Ramirez fired his pistol at D.D. D.D. ran back into his house and collapsed on the floor. D.D., who had been shot several times, was taken to the hospital where he died. Later, near where D.D. had collapsed, police found his shotgun, which was unloaded but pumped.

{¶ 37} Ramirez was indicted for voluntary manslaughter and pled not guilty. A jury trial commenced on January 9, 2017. After the state rested its case, Ramirez moved

18.

for a Crim.R. 29 judgment of acquittal, asserting the state failed to sufficiently establish all of the necessary elements of voluntary manslaughter. The trial court overruled the Crim.R. 29 motion on the basis that the state had argued that provocation, passion and rage are presumed under the law. The jury found Ramirez guilty.

{¶ 38} Ramirez filed a motion for new trial, pursuant to Crim.R. 33, arguing the record only contained evidence of fear, and not sudden passion or rage, thus the state did not establish a necessary element of voluntary manslaughter.

{¶ 39} On March 7, 2017, the trial court issued its order granting new trial ("Order"), finding there was insufficient evidence to sustain the jury's verdict. The state appealed. In *State v. Ramirez*, 6th Dist. Lucas No. L-17-1076, 2018-Ohio-1870 (May 11, 2018) ("*Ramirez I*"), we dismissed the appeal. In *State v. Ramirez*, 153 Ohio St.3d 1485, 2020-Ohio-602, 108 N.E.3d 82 ("*Ramirez II*"), the Supreme Court reversed and remanded.

**First Assignment of Error**

{¶ 40} The state argues "[d]uring trial, the trial court agreed with the State" that sufficient evidence of sudden passion or sudden fit of rage had been shown when the trial court denied Ramirez's Crim.R. 29 motions.

{¶ 41} The state contends the trial court ignored that "evidence that a defendant has used excessive force is evidence which supports the commission of Voluntary Manslaughter."

{¶ 42} The state observes the test for voluntary manslaughter includes both an objective and a subjective component, and cites to *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 153.

{¶ 43} The state asserts the trial court abused its discretion in granting Ramirez's Crim.R. 33 motion for new trial because there was sufficient evidence presented of all of the elements of voluntary manslaughter.

### Crim.R. 29 Argument

{¶ 44} In its Order, the trial court clearly and succinctly declared that "[t]he court found then, as it does now, that the state produced insufficient evidence that the victim provoked Defendant into sudden fit of passion or rage." The trial court explained, when considering the Crim.R. 29 motions, the state "argued that provocation, passion and rage are presumed under the law [and] [i]t was on this basis that the court overruled Defendant's Crim.R. 29 motions, relying on cases such as *State v. Muscatello*, 55 Ohio St.2d 201, 378 N.E.2d 738 (1978) [and] *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992)." The trial court distinguished those cases, in ruling on the Crim.R. 33 motion, noting the syllabi applied to offenders on trial for murder or aggravated murder. The trial court pointedly declared that for a stand-alone charge of voluntary manslaughter, the state is obligated to prove all of the elements of the charge beyond a reasonable doubt.

{¶ 45} In light of the foregoing, the state's argument that the trial court's denial of the Crim.R. 29 motions showed that the trial court agreed with the state that sufficient evidence had been established is not supported by the record.

20.

**Excessive Force Argument**

**{¶ 46}** The state argues that "the trial court ignored the fact that under R.C. 2903.03 * * * evidence that a defendant has used excessive force is evidence which supports the commission of Voluntary Manslaughter." The state cites to *State v. Willis*, 10th Dist. Franklin No. 88AP-406, 1988 WL 131773 (Dec. 6, 1988), in support. The state notes *Willis* was decided after the 1982 amendment of R.C. 2903.03, where the language of the voluntary manslaughter statute was changed from "'while under extreme emotional stress' to 'while under the influence of sudden passion or in a sudden fit of rage.'" Further, "[t]he State asserts that the use of excessive force is evidence which tends to show passion and/or rage on the part of the perpetrator."

**{¶ 47}** In *Willis*, husband and wife were fighting when wife went into the kitchen and screamed she would kill him. *Id.* at *1. Husband ran upstairs to the bedroom, shut the door and retrieved a shotgun from the closet. *Id.* Husband said wife opened the bedroom door with a knife in her hand. *Id.* Husband shot his wife in the neck and killed her. *Id.*

**{¶ 48}** Husband "was subsequently charged with voluntary manslaughter; however, the grand jury indicted him for murder." *Id.* Husband claimed he shot his wife in self-defense. *Id.* at *2. Defendant was convicted of voluntary manslaughter. *Id.*

**{¶ 49}** The *Willis* court noted it "analyzed the relationship between self-defense and voluntary manslaughter in *State v. Roddy*," 10th Dist. Franklin No. 81AP-499, 1981 WL 3600 (Nov. 17, 1981), and the *Roddy* court stated:

21.

[I]n almost every murder case where there is sufficient evidence to permit a charge upon the affirmative defense of self-defense, there is also sufficient evidence to require a charge upon the lesser-included offense of voluntary manslaughter. The two are closely interrelated, with voluntary manslaughter, rather than self-defense, being an appropriate finding where excessive force is used. By excessive force, we mean more force than is reasonably necessary under the circumstances for the defendant to protect himself from the victim. *Willis* at *3.

{¶ 50} The state contends the evidence shows Ramirez used excessive force, as he was an excellent shot, and fired eight shots, not one, and the "feud with Michael Lucas included the victim calling Lucas a racial slur * * * [and] those words in combination with [D.D.'s] act of appearing at the door with a shotgun undoubtedly did arouse Appellee's rage and or passion given his asserted belief that his friends were in danger."

{¶ 51} Upon review, I find no merit in the state's contention that the trial court ignored the use of excessive force issue. The trial court, in its Order, specifically addressed the issue of the use of excessive force and acknowledged the state's argument that Ramirez's discharge of eight shots was excessive, but noted the number and pattern of shots was a matter of debate, as a firearms expert testified it was reasonable to continue shooting until the threat is neutralized.

{¶ 52} I further find *Willis* distinguishable for several reasons, as it involved a murder charge, not a stand-alone charge of voluntary manslaughter, it was decided under

the previous version of R.C. 2903.03, and it relied on *Roddy*, which also involved a murder charge and was decided under the former version of R.C. 2903.03.

### Voluntary Manslaughter Test Argument

{¶ 53} The state argues the legal test for voluntary manslaughter is set forth in *Thompson*, which includes both an objective and a subjective component. This test is used in murder cases in order to determine whether the offender is entitled to an instruction on voluntary manslaughter, which is an inferior-degree offense. *Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096 at ¶ 152; *State v. Shane*, 63 Ohio St.3d 630, 635, 590 N.E.2d 272 (1992), paragraph one of the syllabus. Since Ramirez was not charged with murder, the test for voluntary manslaughter set forth in *Shane* and *Thompson* is inapplicable.

### Sufficiency of the Evidence Argument

{¶ 54} The state argues there was sufficient evidence, which if believed by the jury and viewed in a light most favorable to the state, that supported the finding that Ramirez acted under the influence of sudden passion or in a fit of rage brought on by a serious provocation caused by D.D.

### Law and Analysis

{¶ 55} On appeal, we will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial unless we find an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. An abuse of

23.

discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 56} In order to determine whether the evidence is legally sufficient to support a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 57} The Supreme Court of Ohio has held that "[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Shane* at paragraph two of the syllabus. The Supreme Court also found "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (1998).

{¶ 58} In addition, evidence that the offender used deadly force because he feared for his own safety (self-defense) and/or feared for the personal safety of others (defense of another), does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute. *See State v. Harris*, 129 Ohio App.3d 527, 535, 718 N.E.2d 488 (10th Dist.1998). "Self-defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage." *State v. Thompson*, 10th Dist. Franklin No. 92AP-1124, 1993 WL 51114 (Feb. 23, 1993), *2.

{¶ 59} Here, a review of the record shows the state did not present sufficient evidence of each element of the crime of voluntary manslaughter. The state argues the

serious provocation occasioned by D.D. was the combination of all of the acts and circumstances, including the feud that erupted as a result of Lucas's taunting and recording D.D., and D.D. calling Lucas a racial slur.

{¶ 60} Upon review, the evidence shows Ramirez was not a participant in this feud of words and he was not the target of the slur. Moreover, there is nothing in the record to indicate that Ramirez was provoked by D.D.'s interaction with Lucas. I therefore find, after viewing the evidence in a light most favorable to the state, that D.D.'s statements to Lucas, Ramirez's friend, as a matter of law, do not constitute reasonably sufficient provocation to incite Ramirez to use deadly force.

{¶ 61} The state further argues the evidence established that Ramirez's gun was equipped with a tactical flashlight and laser sight, Ramirez had a high degree of training and accuracy with the gun, and Ramirez used excessive force by firing eight shots. The state submits this evidence indicates Ramirez acted with sudden passion and /or rage after witnessing the feud between D.D. and Lucas, combined with D.D. appearing at the door with a shotgun, as this "undoubtedly did arouse Appellee's rage and or passion given his asserted belief that his friends were in danger."

{¶ 62} Upon further review, the record contains no testimony or evidence that Ramirez was angry or lost control of his temper at any time during the incident. Rather, the evidence shows Ramirez was fearful and was trying to defend his friends when he fired his gun. I therefore find, as a matter of law, after viewing the evidence in a light

25.

most favorable to the state, that Ramirez was not under the influence of sudden passion or in a sudden fit of rage when he fired his gun.

{¶ 63} In light of the foregoing, I find the trial court did not abuse its discretion in ruling there was insufficient evidence of all of the elements of voluntary manslaughter.

## Second Assignment of Error

{¶ 64} The state asserts the trial court applied the wrong legal standard when deciding the Crim.R. 33 motion for new trial because it confused the sufficiency of the evidence standard with manifest weight of the evidence standard, and "justified its change of heart with arguments based on the weight of the evidence."

{¶ 65} The state contends the trial court, in its journal entry, second-guessed its decisions to deny three Crim.R. 29 motions and charge the jury with instructions of voluntary manslaughter. The state submits the trial court improperly based its opinion on its post-trial determination of credibility and manifest weight, as well as its critique of the state's evidence. The state asserts its argument, that sudden passion and/or rage was shown when viewed in a light most favorable to the state by the totality of the circumstances, was misconstrued by the trial court.

## Manifest Weight of the Evidence Standard

{¶ 66} A claim that a jury verdict is against the manifest weight of the evidence involves the court reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of the witnesses and determining whether the jury, in resolving conflicts in the evidence, clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220.

### Analysis

{¶ 67} The record shows the trial court, in its Order, set forth "[t]he court construes Defendant's instant motion as essentially challenging the sufficiency of the evidence, as he did at trial in his motion for acquittal. Although technically distinct from a Crim. R. 29 motion for acquittal, a motion for new trial raised under Crim. R. 33(A)(4) 'nonetheless tests the legal sufficiency of the conviction[.]'" The court then cited a case which cited *Jenks*.

{¶ 68} Upon review, I find the record reveals the trial court applied the correct legal standard in reaching its decision that there was insufficient evidence to sustain the jury's verdict that D.D. provoked Ramirez into a sudden fit of passion or rage. Accordingly, the state's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 69} The state contends the trial court abused its discretion and committed reversible error when it engaged in a post-verdict discussion with the jury, where there was no transcription and counsel was not present, and "[t]his discussion tainted the judge's ruling on the Motion for New Trial, and prevented the ruling from being objective." The state submits "the trial court may have gained inside information about the juror's [sic] thought processes during their deliberations and this information may have inadvertently tainted an otherwise objective consideration of the Appellee's Motion

27.

for New Trial." The state also claims "one or more jurors may have asked questions or made comments which caused the judge to question the validity of the jury's findings and verdict."

{¶ 70} Ramirez counters "the trial court made its intention clear on the record to meet with the jury, and indicated that counsel was welcome to join those discussions * * * [and] the State's assertion that the trial court was tainted by its conversation with the jury is wholly speculative. Without any evidence to the contrary, regularity is presumed."

**Law**

{¶ 71} "To prevail on a claim of prejudice due to an ex parte communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters." *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph thirteen of the syllabus.

**Analysis**

{¶ 72} Upon review, the trial transcript reveals that after the verdict was announced, the trial judge stated, on the record, that he would meet with the jury, and counsel was invited to also meet with the jury, if they wanted. There is no suggestion that counsel chose to meet with the jury, or objected to the judge's meeting. Further, there is no indication that the judge discussed any substantive matters with the jurors. I

28.

therefore find the state has not established it was prejudiced by any discussion the judge had with the jury. Accordingly, the state's third assignment of error is not well-taken.

## Conclusion

{¶ 73} I would affirm the judgment of the Lucas County Court of Common Pleas.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.